IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT
OF VIRGINIA
Norfolk Division

**MATTHEW K. BARBOUR**                )
An Individual,                        )
                                      )
**MARGARET E. KAMMER**                )
An Individual,                        )
                                      )
and                                   )          Civil Action No.
                                      )
**CLAIRE R. BARBOUR**                 )
An Individual,                        )          JURY TRIAL DEMANDED
                                      )
    Plaintiffs,                        )
                                      )
v.                                    )
                                      )
**OCCIDENTAL DEVELOPMENT LLC**)
a Michigan Limited Liability Company, )
                                      )
Serve: C T Corporation System        )
    4701 Cox Rd, Ste 285               )
    Glen Allen, VA 23060-6808          )
                                      )
    Defendant.                         )


## COMPLAINT

Plaintiffs, Matthew K. Barbour ("Mr. Barbour"), Margaret E. Kammer ("Ms. Kammer") and Claire R. Barbour ("Claire") (collectively, the "Barbours"), by counsel, and for their Complaint against Defendant, Occidental Development LLC ("Occidental"), allege the following causes of action:

## INTRODUCTION

1.　　This is an action in tort for Defendants' concealment of an active leak, water damage, failure to remediate mold to professional standards, negligent repair of an active leak and negligence per se in the property rented by the Barbours.

## PARTIES

2.　　Plaintiff, Matthew K. Barbour, is a natural person and a citizen of Virginia, residing in Virginia Beach, Virginia.

3.　　Plaintiff, Margaret E. Kammer, is a natural person and a citizen of Virginia, residing in Virginia Beach, Virginia.

4.　　Plaintiff, Claire R. Barbour, is a natural person under the age of 21, currently residing with her parents, Mr. Barbour and Ms. Kammer.

5.　　Defendant, Occidental Development LLC, is a Michigan Limited Liability Company with its principal place of business located in Bloomfield Hills, MI. On information and belief all members are domiciled in Michigan.

## JURISDICTION AND VENUE

6.　　This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000 and the plaintiffs are citizens of Virginia while the Defendant is a citizen of Michigan.

7.　　Venue for this action lies properly in the United States District Court for the Eastern District of Virginia, Norfolk Division, pursuant to 28 U.S.C. § 1391, because the events giving rise to Plaintiff's claims occurred in the City of

Virginia Beach, Virginia, a territory included within those assigned to the Norfolk Division of the Eastern District of Virginia.

## FACTUAL BACKGROUND

8.     On April 29, 2019, the parties executed a Lease Agreement (the "Lease") to lease the residential apartment located at 1523 Cape Ann Way, Apt. #1220, Virginia Beach, VA 23453 (the "apartment"). A true and correct copy of the Lease is attached hereto as Exhibit A.

9.     On April 29, 2020, the parties executed a Renewal Lease Agreement (the "Renewal") to lease the same apartment. A true and correct copy of the Renewal is attached hereto as Exhibit B.

10.     Both the Lease and the Renewal included an identical addendum titled "Mold Policy" which both parties signed. Exhs. A,B at 14-15.

11.     On March 26, 2020, around 3:00 a.m., the Barbours awoke to find water pouring down the AC vent in the guest bathroom and several areas of the apartment ceiling including the kitchen, entryway, in front of the hot water heater and in front of the master bedroom. The incoming water damaged the ceilings and walls, as well as the flooring in the guest bathroom, entryway and kitchen. The water leak also damaged the carpeting in several places in rooms adjoining the kitchen, guest bathroom and just outside the master bedroom.

12.     The Barbours contacted Defendant, who shut off the water until 8:00 a.m. then dropped off a small dehumidifier informing the Barbours to empty it when it became full. Defendant did not perform any inspection at that time.

13.    When Defendant collected the humidifier, they informed the Barbours that the wet ceiling would "dry with time" and provided the Barbours spray paint to cover the water marks.

14.    Other than the dehumidifier provided for a day and a half and the spray paint, Defendant did not perform any repairs or remediation to address the leak or the water marks on the ceiling.

15.    Over the next few months, the water marks on the ceiling grew bigger and darker exhibiting shades of green, black and yellow. The Barbours repeatedly notified Defendant about the growing problem, which Defendant repeatedly ignored.

16.    On August 6, 2020, a Thursday, just before 5:00 p.m., Ms. Kammer discovered a puddle on the carpet and immediately notified Defendant's emergency maintenance crew.

17.    On August 6, 2020, around 6:00 p.m., the Defendant's maintenance crew had not arrived, and the Property began to flood substantially from the side wall area of the apartment. Within a few minutes, the kitchen, middle living space, both bathrooms, front door walkway, back door entrance, girls' bedroom closet and half of the master bedroom had a pool of water three inches of water thick.

18.    Ms. Kammer and Mr. Barbour calls to Defendant's emergency maintenance phone number to plead for help went unanswered.  Water continued to pour in through the side wall.

19.     The active flooding stopped around 6:35 p.m. Defendant's maintenance crew did not report to the apartment until approximately 7:30 p.m., when they ran a vacuum over some of the wettest carpet for 10 minutes and placed two fans on the wet carpet which they plugged into the wall that the water had come in through.

20.     Still on August 6, 2020, around 9:00 p.m. a different maintenance worker placed a small dehumidifier in the apartment and instructed the Barbours to "let it be" and left.

21.     On August 7, 2020, around 7:00 p.m., after no one contacted the Barbours on behalf of Defendants, Mr. Barbour left a message on Defendants emergency maintenance hotline requesting an update on the still very wet carpet and apartment.

22.     By this time, both Ms. Kammer and Mr. Barbour began adverse physical symptoms. Mr. Barbour experienced heavy chest pains and difficulty breathing, and later he experienced lightheadedness, dizziness and fatigue as well as migraine like headaches.

23.     Ms. Kammer experienced dizziness, lightheadedness, runny nose and red, dry itchy eyes. She further developed nosebleeds, headaches and had difficulty breathing and sleeping.

24.     Throughout the weekend of August 8 and 9, 2020, Defendant failed to make any contact with the Barbours despite their repeated phone calls and

voicemails stating that the apartment was still soaked, unlivable, and that they were experiencing physical symptoms. The Barbours were particularly concerned for their 9-month-old daughter, Claire, and for Ms. Kammer, who was 7 months pregnant at the time. The Barbours spent the entire weekend confined to the master bedroom which -although still moist – was the driest room in the apartment.

25.     By Monday morning, August 10, 2020, Claire began showing signs of illness and adverse physical reactions to the apartment. In particular, Claire experienced a dry cough, she then developed a runny nose and sleep disruption. Claire also experienced heightened stress, anxiety and fatigue.

26.     On August, 10, 2020, Mr. Barbour spoke to "Marcus" in Defendant's office who – after being informed the carpet was more than 75% wet throughout the apartment – informed Mr. Barbour that he would contact their "carpet guy" and see what could be done.

27.     Around 2:00 p.m. on August 10, 2020, Defendants sent an employee from East Coast Carpet Company ("ECCC") to examine the carpet at the apartment, who recommended replacing the carpet and the padding. Defendant ignored the recommendation and insisted on placing more fans and another dehumidifier throughout the apartment in an amateur attempt to try to dry it.

28.     On August 11, 2020, two ECCC employees arrived, pulled back the wet carpet in the living room, and removed the padding from underneath. ECCC

did not examine or work on any other carpeted area in the apartment. ECCC informed Mr. Barbour that fans needed to dry the concrete for a few hours. When Defendant failed to send anyone in to help, Mr. Barbour plugged the two fans and one dehumidifier to try to dry the concrete.

29.    In the afternoon of August 11, 2020, rain flooded the apartment again. This time soaking both bedrooms completely in addition to the main living room. After multiple calls to Defendant when unanswered, Mr. Barbour found an off-duty maintenance member in the building next door and pleaded for help. The off-duty worker was able to get an on-duty employee to respond to the apartment.

30.    Because of the soaked state of the apartment, the Barbours unplugged most electrical equipment at this time including the fans and dehumidifier out of fear that the water might spark an electrical fire. The on-duty employee became upset seeing the fans unplugged and ignored the explanation from the Barbours regarding a fear of a fire.

31.    On August 12, 2020, Defendant's office manager, Jessica, contacted the Barbours. She apologized for the flooding and stated that it was caused by a "foundation issue that also occurred during Hurricane Matthew years ago." She refused to permit the Barbours to break their lease.

32.    At or around August 16, 2020, an inspector from Virginia Beach examined the entire complex and concluded Defendants were in violation of multiple provisions of the Virginia Maintenance Code.

33.   On August 21, 2020, Emergency Restoration Services – at the Barbours request – obtained samples from the bedroom and from the bedroom closet drywall from the apartment which it provided to IMS Laboratory for examination.

34.   On August 25, 2020, IMS Laboratory provided an analysis of the samples, finding 150,000 spores of Chaetomium per square centimeter on the bedroom sample and 1,620 spores of Chaetomium per square centimeter on the bedroom closet sample. IMS Laboratory further found 1,250,000 spores of Penicillium, Aspergillus and Trichoderma ("Pen/Asp") per square centimeter on the bedroom closet sample which it categorized as "off scale on graph".

35.   Chaetomium is "assumed to be toxigenic. It has been known to cause systemic, cerebral, cutaneous, subcutaneous, and pulmonary infections."

36.   Pen/Asp is allergenic and can cause asthma, pulmonary emphysema, opportunistic infections of ears and eyes, and severe pulmonary infections.

## COUNT I
### NEGLIGENCE – Violation of Va. Code § 55.1-1220

37.   Plaintiffs incorporate the allegations in Paragraphs 1 through 36 as if fully restated herein.

38.   Virginia Code § 55.1-1220 requires that when there is visible evidence of mold, the landlord shall promptly remediate the mold conditions in accordance with the requirements of subsection E of Virginia Code § 8.01-226.12.

39.   Virginia Code § 8.01-226.12(E) requires that after visible evidence of mold occurs within a dwelling unit, the landlord or managing agent with

maintenance responsibilities shall, exercising ordinary care, perform mold remediation in accordance to professional standards.

40.     Defendant breached this duty of ordinary care by ignoring Plaintiffs' repeated requests for remediation of the visible water stains in the ceiling which were exhibiting colors consistent with mold from April 2020 through August 2020.

41.     Defendant further breached this duty of ordinary care by attempting to spray paint over the water stain.

42.     The August 6, 2020, flood increased the toxic mold in the apartment. Defendant failed to exercise ordinary care in remediating the flood and by failing to relocate Plaintiffs to a safe location.

43.     The August 11, 2020, flood increased the toxic mold in the apartment. Defendant failed to exercise ordinary care in remediating the flood and by failing to relocate Plaintiffs to a safe location.

44.     Defendant failed to take action to have the mold professionally remediated.

45.     Defendant's breach has resulted in Plaintiffs' prolonged exposure to toxic mold.

46.     As a result of their prolonged exposure to toxic mold, Plaintiffs have suffered permanent medical injury, current and future medical expenses, pain and suffering, and damages to their personal property.

47.     Defendant is liable for all Plaintiffs' injuries.

## COUNT II
## NEGLIGENCE PER SE – Violation of Virginia Maintenance Code 505.1

48.     Plaintiffs incorporate the allegations in Paragraphs 1 through 47 as if fully restated herein.

49.     Defendant violated Virginia Maintenance Code ("VMC") 302.2 by failing to protect the apartment foundation walls from the accumulation and drainage of surface or stagnant water.

50.     Defendant violated VMC 304.7 by failing to protect the foundation from the accumulation of roof drainage.

51.     A direct purpose of VMC 302.2 and VMC 304.7 is to protect occupants from harm caused by water leakage, including the development of toxic mold.

52.     Defendant's violations of VMC 302.2 and VMC 304.7 has resulted in Plaintiffs' prolonged exposure to toxic mold.

53.     As a result of their prolonged exposure to toxic mold, Plaintiffs have suffered permanent medical injury, current and future medical expenses, pain and suffering, and damages to their personal property.

54.     Defendants are liable for all Plaintiffs' injuries.

## COUNT III
## NEGLIGENT REPAIR

55.     Plaintiffs incorporate the allegations in Paragraphs 1 through 54 as if fully restated herein.

56.     Defendant undertook to repair the apartment from the March 2020 water leak.

57.     Defendant's negligent repair attempt resulted in the dangerous conditions of wet carpet and wet ceilings.

58.     The dangerous conditions of wet carpet and wet ceilings caused by Defendant's negligent repair resulted in the accumulation of toxic mold.

59.     By attempting to repair the water damage caused from the March 2020 flood, Defendant owed Plaintiffs a duty to ensure the repair was performed correctly and adequately.

60.     Defendant breached this duty by failing to adequately dry the ceiling and carpet, caused the development of active toxic mold in the Property.

61.     Defendant's breach of this duty has resulted in Plaintiffs' prolonged exposure to toxic mold.

62.     As a result of their prolonged exposure to toxic mold, Plaintiffs have suffered permanent medical injury, current and future medical expenses, pain and suffering, and damages to their personal property.

63.     Defendants are liable for all Plaintiffs' injuries.

## COUNT IV
## NEGLIGENT REPAIR

64.     Plaintiffs incorporate the allegations in Paragraphs 1 through 63 as if fully restated herein.

65.     Hurricane Matthew hit Virginia Beach on October 7, 2016, causing damage to Defendant's property which includes the apartment. As a result of the damage, Defendant undertook to repair the foundation.

66. By attempting to repair the foundation, Defendant owed Plaintiffs a duty to ensure the foundation was repaired in a professional manner that did not otherwise result in a dangerous condition.

67. Defendant's negligent foundation repair resulted in a condition which caused Plaintiff's apartment to flood during heavy rain storms.

68. The flooding caused by Defendant's negligent repair ultimately caused the accumulation of active toxic mold.

69. Defendant's breach of this duty has resulted in Plaintiffs' prolonged exposure to toxic mold.

70. As a result of their prolonged exposure to toxic mold, Plaintiffs have suffered permanent medical injury, current and future medical expenses, pain and suffering, and damages to their personal property.

71. Defendants are liable for all Plaintiffs' injuries.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for the entry of a final order for relief and judgment against the Defendants for:

A. $50,000 for current medical expenses;

B. $1,000,000 for projected future medical expenses;

C. $1,000,000 for pain and suffering;

D. Further compensatory and consequential damages as may be applicable, all costs and attorney fees incurred as a result of the actions

complained of herein, and such other and further relief as the Court may find proper and just.

A JURY TRIAL IS DEMANDED.

Respectfully Submitted,

**MATTHEW K. BARBOUR**
**MARGARET E. KAMMER**
**CLAIRE R. BARBOUR**

By: _____
Of Counsel

Matthew J. Weinberg, Esquire (VSB# 88664)
INMAN & STRICKLER, P.L.C.
575 Lynnhaven Parkway, Suite 200
Virginia Beach, Virginia 23452
Telephone: (757) 486-7055
Facsimile: (757) 431-0410
E-mail: mweinberg@inmanstrickler.com
*Counsel for Plaintiffs*